IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MONTE T. HURT | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-05-CV-1508-BD |
| | § | |
| ECOLAB, INC. | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Monte T. Hurt and Defendant Ecolab, Inc. have filed cross-motions for summary judgment in this civil action brought under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq*.  For the reasons stated herein, each motion is granted in part and denied in part.

I.

Defendant is a global developer and marketer of industrial cleaning products and services. (Plf. MSJ App. at 235, Int. #1(d)).  From 1998 until January 17, 2005, plaintiff was employed by defendant as a bulk line operator in its Garland, Texas plant.  (*Id.* at 237, Int. #2(a)).  As part of his duties, plaintiff filled multi-gallon containers with cleaning compound and then placed the containers onto a conveyor belt.  (*Id.* at 7-8).  On October 10, 2004, plaintiff injured his right shoulder moving a big-screen television at his home.  (*Id.* at 10-12, 85).  Upon learning of this injury, defendant notified plaintiff by letter that he may be eligible for short-term disability benefits and a medical leave of absence.  (*Id.* at 88).  In order to receive benefits, plaintiff was instructed to provide a statement from his treating physician with a release date for his return to work.  If a specific release

date was not known, defendant required monthly updates from the doctor.  (*Id.*).[1]  Plaintiff also

received a notice of his rights under the FMLA which states, in pertinent part:

> If you take Medical leave for your own serious health condition or to
> care for the serious health condition of your child, spouse or parent,
> the Company may require certification from a health care provider.
> The initial certification, if required, will be due fifteen (15) calendar
> days after the request for Medical leave, and a certification
> supporting the leave may be required every thirty (30) days, subject
> to exceptions.  If you do not provide the certification as required,
> leave may be denied until it is provided.  The medical certification
> under FMLA does not necessarily satisfy the medical information
> required to become eligible for or maintain disability plan benefits.
> Information required will be governed by those plans.

(Def. MSJ App. at 539).

On October 21, 2004, plaintiff was examined by Dr. Bernie L. McCaskill, an orthopedic

surgeon, who diagnosed him with spondylogenic cervical spine pain and right rotator cuff tendonitis.

(Plf. MSJ App. at 90).  Dr. McCaskill prescribed physical therapy three times a week, an active

stretching and exercise program, and a variety of medications, including steroid injections.  (*Id.*).

Although plaintiff was released to return to work, he was restricted from lifting more than 25 pounds

and doing any overhead work.  (*Id.* at 91).  This effectively precluded plaintiff from performing his

duties as a bulk line operator.  (*Id.* at 166).  Dr. McCaskill instructed plaintiff to return for follow-up

visits every two weeks and predicted he would reach "maximum medical improvement" within six

to 12 weeks.  (*Id.* at 91).

---

[1] Ecolab's Short-Term Disability Policy, as set forth in the Human Resources Manual, provides, in pertinent part:

> Medical leaves of absence are approved and corresponding payments are made only
> upon receipt of a Statement from a licensed medical practitioner, at times or
> intervals required by Ecolab.  On the statement, the licensed medical practitioner
> verifies the associate's disability condition, the course of treatment and, if known,
> the expected return-to-work date.

(Def. MSJ App. at 546).  Under this policy, short-term disability triggers simultaneous coverage under the FMLA. Employees are not required to submit additional paperwork or documentation to obtain FMLA benefits.  (*See id.* at 538).

As instructed, plaintiff provided defendant with medical records and an Attending Physician's Statement of Disability confirming his diagnosis, treatment plan, restrictions, and prognosis for recovery. (*Id.* at 86-92). Based on this certification, defendant granted plaintiff short-term disability benefits and FMLA leave beginning October 21, 2004--the date of his initial examination. Shelly Burgess, an Ecolab disability case manager, told plaintiff the medical certification was good for two weeks and instructed him to provide an updated report after his next appointment. (*Id.* at 197-98). Plaintiff returned to the doctor on November 8, 2004. At that visit, Dr. McCaskill noted moderate improvement in plaintiff's condition and affirmed his earlier prediction that "maximum medical improvement" should be obtained within the next 10 weeks. (*Id.* at 93). Plaintiff was scheduled for a follow-up exam on November 29, 2004, but could not afford the $50.00 co-pay. (*Id.* at 1, ¶ 4, 174). Dr. McCaskill recorded plaintiff as a "no show" for this appointment. (*Id.* at 93). When plaintiff failed to provide an updated medical certification, defendant discontinued his short-term disability benefits. (*Id.* at 165). On December 20, 2004, Lisa Albright, an employee in the Human Resources Department, telephoned plaintiff to request documentation to support his request for medical leave after November 29, 2004. (*Id.* at 187). Two days later, Albright advised plaintiff by letter that his employment would be terminated if the required documentation was not received by January 3, 2005. (Def. MSJ App. at 558).

Plaintiff went back to the doctor on December 23, 2004. Following that visit, Dr. McCaskill wrote a cryptic note on one of his prescription pads stating, "Patient has been unable to work from 11-8-04 thru 12-24-04. OK to return to work on 12-24-04." (*Id.* at 96). Plaintiff resumed his duties as a bulk line operator after the Christmas Holidays on December 28, 2004. (*Id.* at 62). Notwithstanding his return to work, defendant continued to insist on documentation to support plaintiff's medical leave after November 29, 2004. (*See id.* at 183). When no new information was

provided, defendant determined that all of plaintiff's absences from November 29, 2004 through December 27, 2004, a total of 18 work days, were unsubstantiated.  On January 17, 2005, plaintiff was fired for excessive absenteeism.  (Def. MSJ App. at 566).

Plaintiff now sues defendant for interfering with the exercise of his FMLA rights and for discriminating against him for exercising or attempting to exercise those rights.  The case is before the court on cross-motions for summary judgment.  Defendant contends that plaintiff cannot prove his interference claim because he was only entitled to FMLA leave through November 29, 2004.  With respect to plaintiff's discrimination claim, defendant maintains that plaintiff cannot establish a *prima facie* case of discrimination or, alternatively, that the reason given for terminating his employment was pretextual.  Plaintiff seeks partial summary judgment as to the liability aspects of both claims.  The issues have been fully briefed by the parties and the motions are ripe for determination.

## II.

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  Where, as here, a case is presented by way of cross-motions for summary judgment, each movant has the burden of producing evidence to support its motion.  A movant who bears the burden of proof at trial must establish "beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir. 1986).  By contrast, a party seeking summary judgment who does not have the burden of proof at trial need only point to the absence of a genuine fact issue.  *See Duffy v. Leading Edge Products, Inc.,* 44 F.3d 308, 312 (5th Cir. 1995).  Once the movant meets its initial burden, the non-movant must show that summary

judgment is not proper.  *See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992).  The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence.  *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 113 S.Ct. 82 (1992).  All evidence must be viewed in the light most favorable to the party opposing the motion. *See Rosado v. Deters*, 5 F.3d 119, 122 (5th Cir. 1993).

A.

The FMLA allows qualified employees up to 12 work weeks of leave during any 12-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).  The statute contains two distinct types of provisions--prescriptive and proscriptive.  *See Wood v. Gateway, Inc.*, No. 5-03-CV-007-C, 2003 WL 23109832 at *7 (N.D. Tex. Dec. 12, 2003) (citing cases).  To protect the prescriptive rights of eligible employees, the FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the Act]." 29 U.S.C. § 2615(a)(1).  When proving a violation of an employee's prescriptive rights, the subjective intent of the employer is irrelevant.  *Wood*, 2003 WL 23109832 at *8.  "The issue is simply whether the employer provided its employee the entitlements set forth in the FMLA." *Id.*, *quoting Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998).  In addition to its prescriptive obligations, an employer may not "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the Act]."  29 U.S.C. § 2615(a)(2).  This proscriptive aspect of the statute prohibits employers from "us[ing] the taking of FMLA leave as a negative factor in employment decisions, such as hiring, promotions or disciplinary actions." 29 C.F.R. § 825.220(c); *see also Bocalbos v. National Western Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998), *cert. denied*, 120 S.Ct. 175 (1999).

An employer may require that a request for FMLA leave be supported by a certification issued by a treating physician or health care provider.  29 U.S.C. § 2613(a); *see also* 29 C.F.R. § 825.305.  A certification is sufficient if it states:

1.      the date on which the serious health condition commenced;

2.      the probable duration of the condition;

3.      the appropriate medical facts within the knowledge of the health care provider regarding the condition; and

4.      a statement that the employee is unable to perform the functions of his position.

29 U.S.C. § 2613(b)(1)-(4).  An employee may be required to obtain subsequent recertifications "on a reasonable basis."  *Id.* § 2613(e).  However, if the minimum duration of the period of incapacity as specified by a health care provider is more than 30 days, the employer may not request recertification until that minimum duration has passed, unless:

1.      the employee requests an extension of leave;

2.      circumstances described by the previous certification have changed significantly (e.g., the duration of the illness, the nature of the illness, complications); or

3.      the employer receives information that casts doubt upon the continuing validity of the certification.

29 C.F.R. § 825.308(b) & (c).  The failure to provide an appropriate medical certification or recertification is fatal to a claim under the FMLA.  *Id.* § 825.311(b); *see also Kinchelow v. Robinson Property Group*, No. 2-97-CV-047-B, 1998 WL 180316 at *2 (N.D. Miss. Mar. 27, 1998).

B.

The parties initially dispute the relevant period to which plaintiff was entitled to FMLA leave.  While defendant admits that plaintiff was entitled to medical leave through November 29,

2004, it contends that any absences after that date were not protected by the FMLA because plaintiff failed to submit periodic recertifications from his doctor as directed by his disability case manager. Plaintiff counters that he was entitled to FMLA leave through December 23, 2004, the date he was released to return to work.

The medical information provided by plaintiff following his examination on October 21, 2004 satisfies the requirements of the FMLA through the "minimum duration of the period of incapacity." In his notes, Dr. McCaskill wrote that plaintiff sustained a serious shoulder injury on or about October 10, 2004. Medical facts regarding that condition, including a treatment plan and the prognosis for recovery, were detailed with sufficient clarity. Dr. McCaskill anticipated a recovery period of six to 12 weeks, during which time plaintiff could not lift more than 25 pounds or work above shoulder level. (*See* Plf. MSJ App. at 90-91). An Attending Physician's Statement of Disability completed by Dr. McCaskill contains substantially the same information. (*Id.* at 86-87). Because the minimum duration of plaintiff's incapacity was six weeks, which is more than 30 days, defendant could not require plaintiff to provide medical updates every two weeks as a condition to receiving FMLA leave. To the contrary, plaintiff was not obligated to provide further information to substantiate his request for medical leave until that six-week period had passed. *See* 29 C.F.R. § 825.308(b)(1).[2] The court therefore determines that plaintiff has conclusively established his entitlement to FMLA leave through December 2, 2004--six weeks from October 21, 2004.

By contrast, defendant has proved that plaintiff was not entitled to medical leave after December 2, 2004. In an attempt to establish his entitlement to leave beyond that date, or at least raise a genuine issue of material fact for trial, plaintiff relies on medical reports from his visits to

---

[2] Defendant was not prohibited from requesting more frequent medical certifications for other purposes, such as the continued payment of short-term disability benefits. *See Geromanos v. Columbia University*, 322 F.Supp.2d 420, 431-32 (S.D.N.Y. 2004).

Dr. McCaskill on November 8, 2004 and December 23, 2004.  However, neither report contains a statement that plaintiff could not perform the functions of his position--an essential requirement of section 2613(b).  Although a note allegedly written by the doctor on December 23, 2004 states that plaintiff was "unable to work from 11-8-04 thru 12-24-04," that statement does not satisfy the certification requirements of the FMLA.[3]  *See Kinchelow*,1998 WL 180316 at *2 ("To state that the employee should be excused from work is not the same thing as saying that the employee cannot perform the functions of her job.").

## C.

Having determined that plaintiff was entitled to FMLA leave through December 2, 2004, the court has little difficulty concluding that defendant interfered with plaintiff's rights under the statute. To prevail on his interference claim, plaintiff must prove that:  (1) he is an eligible employee; (2) the defendant is an employer; (3) he was entitled to FMLA leave; (4) he gave the defendant notice of his intention to take leave; and (5) the defendant denied him benefits to which he was entitled. *See Morgan v. The Neiman-Marcus Group, Inc./Neiman-Marcus Direct*, No. 3-05-CV-0079-G, 2005 WL 3500314 (N.D. Tex. Dec. 20, 2005) (citing cases).  The first, second, and fourth elements are not disputed.  Plaintiff has established "beyond peradventure" that he was entitled to FMLA leave through December 2, 2004 and that defendant denied him benefits after November 29, 2004.  In particular, defendant interfered with plaintiff's FMLA rights by requiring him to provide updated reports from his treating physician every two weeks.  *See LeGrand v. Village of McCook*, No. 96-Civ-5951, 1998 WL 182462 at *5 (N.D. Ill. Apr. 15, 1998).  The court therefore grants summary

---

[3] There is some evidence to suggest that Dr. McCaskill did not write the note or even examine plaintiff on December 23, 2004.  When questioned about this at his deposition, Dr. McCaskill observed that the note "was actually stamped, rather than signed." (Def. MSJ App. at 252-53).  The doctor later admitted that one of his nurses or patient care assistants may have written the note because "[t]here's a distinct possibility I was not in the office" that day.  (*Id.* at 253-54).

judgment in favor of plaintiff for the wrongful denial of FMLA leave from November 29, 2004 through December 2, 2004--a period of four days.

### D.

Plaintiff further alleges that defendant used his FMLA leave as a "negative factor" in firing him for excessive absences. This proscriptive claim is analyzed in the same manner as a discrimination claim brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. *See Richardson v. Monitronics International, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005). To prove discrimination, a plaintiff may rely on direct or circumstantial evidence, or both. *See Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). Regardless of the method of proof utilized by the plaintiff, a defendant may avoid liability by proving it would have made the same decision absent any discriminatory animus or improper motive. *See Richardson*, 434 F.3d at 333.

Such is the case here. Although there is sufficient evidence in the record to at least raise a fact issue as to whether defendant used plaintiff's absences between November 29, 2004 and December 2, 2004 as a "negative factor" in deciding to fire him, (s*ee, e.g.* Def. MSJ App. at 356-57), the court is convinced that defendant would have made the same decision even if those absences were not considered. The attendance policy at the Garland plant where plaintiff was employed clearly provides that nine unexcused absences over a 365-day period is grounds for immediate termination. The policy is mandatory with "No Exceptions." (*Id.* at 533). Plaintiff missed 15 days of work between December 2, 2004 and December 23, 2004. None of those absences were covered by the FMLA. For that reason alone, his termination was justified.[4] *See Richardson*, 434 F.3d at 336

---

[4] The court also notes that plaintiff accumulated eight unexcused absences between December 8, 2003 and October 1, 2004--nearly three weeks before he was entitled to any FMLA leave. As discipline for his poor attendance, plaintiff was required to serve a one-day suspension on October 7, 2004. (Def. MSJ App. at 533-35).

(employer entitled to summary judgment on FMLA retaliation claim where employer established that employee had more than enough unexcused absences to justify termination under company's attendance policy); *Rager v. Dade Behring, Inc.*, 210 F.3d 776, 778 (7th Cir. 2000) (same). Defendant is entitled to summary judgment with respect to plaintiff's discrimination claim.

## CONCLUSION

Defendant's motion for summary judgment [Doc. #17] and plaintiff's cross-motion for partial summary judgment [Doc. #25] are granted in part and denied in part.  The court determines as a matter of law that:  (1) plaintiff was entitled to FMLA leave from October 21, 2004 through December 2, 2004, and (2) defendant interfered with plaintiff's rights by denying him leave from November 29, 2004 through December 2, 2004.  To that extent, plaintiff's cross-motion for partial summary judgment is granted and defendant's motion for summary judgment is denied.  In all other respects, defendant's motion is granted and plaintiff's cross-motion is denied.

The court will schedule a trial on damages by separate order.

SO ORDERED.

DATED:  May 23, 2006.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE