IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MONTE T. HURT | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-05-CV-1508-BD |
| | § | |
| ECOLAB, INC. | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Monte T. Hurt has filed a motion for reconsideration of the May 23, 2006 order granting in part and denying in part the parties' cross-motions for summary judgment in this case brought under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq*. For the reasons stated herein, the motion is denied.

I.

The relevant background facts and procedural history of this case are set out in *Hurt v. Ecolab, Inc.*, No. 3-05-CV-1508-BD, 2006 WL 1409520 (N.D. Tex. May 23, 2006). Succinctly stated, plaintiff, a six-year employee of Ecolab, was terminated by the company for excessive absenteeism on January 17, 2005. (Def. MSJ App. at 566). Three months earlier, on October 10, 2004, plaintiff inured his shoulder moving a big-screen television at his home. (Plf. MSJ App. at 10-12, 85). Upon learning of this injury, defendant notified plaintiff that he may be eligible for short-term disability benefits and a medical leave of absence under the FMLA. (*Id.* at 88). A letter sent to plaintiff on October 12, 2004 states, in pertinent part:

I have been notified that you may be eligible for a medical leave of absence. This letter outlines information for a short-term disability leave. Because Ecolab wants to ensure that you receive all the benefits to which you are entitled, a team of experts works together to manage each and every leave. It is by working together as a team that we ensure you get the benefits to which you are entitled and are back at work when it is appropriate . . .

**Ecolab's Short-Term Disability Policy (Attachment 2):**

. . . If you are a full-time employee, you may be entitled to up to six months of disability pay based on your length of service, and, of course, the duration of your disability.

* * * *

**Disability Paperwork (Attachment 3):**

To receive a benefit payment during your leave, the enclosed paperwork (Claimant's Statement and Physician's Statement) must be completed and returned . . . within ten days. . . . You should understand that failure to return the paperwork within the time period set, may result in the suspension of your pay and may jeopardize your employment with Ecolab.

* * * *

**Family Medical Leave Act (Attachment 4):**

If you have been employed for one year, the circumstances which establish approval and eligibility for a short-term disability leave also establishes approval for a simultaneous leave under the Family Medical Leave Act (FMLA). Therefore, no paperwork beyond the short-term disability paperwork is required. The FMLA generally provides employees with up to 12 weeks of unpaid leave for disability. Your time off work on paid leave will count toward the 12 weeks available under the FMLA. Additional rights and information are described in the enclosed FMLA notice.

You may not meet the requirements for a disability leave, but may be eligible for a leave under the Family Medical Leave Act. If this is the case you will need to complete the certification section in attachment four.

> **<u>Your Responsibilities</u>**.
>
> Return the employee section of the disability paperwork and ensure your doctor completes the Physician's Statement.
>
> * * * *
>
> Read the FMLA attachment carefully and understand your rights and responsibilities.

(Def. MSJ App. at 538). Defendant also sent plaintiff a notice of his rights and obligations under the FMLA:

> You have requested a leave of absence which may qualify as a family or medical leave under the Family and Medical Leave Act ("FMLA"). The following rights and obligations apply to your family and/or medical leave of absence:
>
> * * * *
>
> If you take Medical leave for your own serious health condition. . ., the Company may require certification from a health care provider. The initial certification, if required, will be due fifteen (15) calendar days after the request for Medical leave, and a certification supporting the leave may be required every thirty (30) days, subject to exceptions. If you do not provide the certification as required, leave may be denied until it is provided.

(*Id.* at 539).[1]

On or about October 21, 2004, plaintiff provided defendant with medical records and an Attending Physician's Statement of Disability indicating that he could not perform the physical requirements of his job and predicting maximum medical improvement within six to 12 weeks. (Plf. MSJ App. at 91-92, 168-69). Based on this certification, defendant granted plaintiff FMLA leave beginning October 21--the date of his initial examination. Although plaintiff returned to the doctor on November 8, 2004 and December 23, 2004, he never provided an updated medical report

---

[1] In his summary judgment reply brief, plaintiff states "it is not clear" whether he received this letter and attachments. (*See* Plf. MSJ Reply Br. at 4-5). However, plaintiff does not deny receiving the letter and accompanying materials.

establishing his inability to perform the functions of his position. By the time plaintiff went back to work on December 28, 2004, he had accumulated more than nine unexcused absences, which justified his immediate termination under company policy. (Def. MSJ App. at 533).

On June 29, 2005, plaintiff sued defendant for interfering with the exercise of his FMLA rights and for discrimination in violation of the statute. Both sides then moved for summary judgment. In a memorandum opinion and order filed on May 23, 2006, the court ruled that plaintiff was entitled to FMLA leave from October 21, 2004 through December 2, 2004, and that defendant interfered with plaintiff's rights by denying him leave from November 29, 2004 through December 2, 2004--a period of four days.[2] *Hurt*, 2006 WL 1409520 at *4-5. Despite plaintiff's limited success on his interference claim, the court granted summary judgment in favor of defendant on plaintiff's discrimination claim because the evidence established that defendant would have made the same decision to fire plaintiff even if his excused absences were not considered. *Id.* at *6. Plaintiff now asks the court to revisit that ruling on the grounds that: (1) defendant never notified plaintiff of the requirements of a proper medical certification under the FMLA or the consequences of failing to provide such a certification; (2) plaintiff should have been given an opportunity to cure any deficiencies in his medical documentation; and (3) the court misapplied the law governing plaintiff's discrimination claim.

II.

The federal rules do not recognize a motion for reconsideration as such. However, a party may ask the court to reconsider a prior ruling "to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. International Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989); *see also Seibu Corp. v. KPMG LLP*, No. 3-00-CV-1639-X, 2001 WL 1658130 at *2 (N.D.

---

[2] Defendant concedes that plaintiff was entitled to FMLA leave through November 29, 2004.

Tex. Dec. 20, 2001) (Kaplan, J.). The purpose of such a request is extremely narrow. *Waltman*, 875 F.2d at 473. Motions for reconsideration are not a vehicle to permit a party to rehash arguments it could or should have made in its initial motion. *Seibu*, 2001 WL 1658130 at *2 (citing cases).

A.

In his cross-motion for summary judgment, plaintiff argued that defendant never notified him of the requirements of a proper medical certification and did not give him a meaningful opportunity to cure any deficiencies in his medical documentation. (*See* Plf. MSJ Br. at 10-19). Under the FMLA:

> A employer may require that a request for leave . . . be supported by a certification issued by the health care provider of the eligible employee . . . [and] [t]he employee shall provide, in a timely manner, a copy of such certification to the employer.

29 U.S.C. § 2613(a). Regulations promulgated by the Department of Labor clarify when and how the employer may require a medical certification. As it pertains to this case:

1. The employer must request a medical certification in writing.

2. The request must advise the employee of "the specific expectations and obligations of the employee and explain [] any consequences of a failure to meet these obligations."

3. In most cases, the request must be made "within two business days after the leave commences. The employer may request certification at some later date if the employer later has reason to question the appropriateness of the leave or its duration."

4. The employer must allow the employee at least 15 days to respond to the medical certification request.

5. If the original certification is insufficient or incomplete, the employer must "provide the employee a reasonable opportunity to cure any such deficiency."

*See* 29 C.F.R. §§ 825.301(b)(1) & 825.305(c)-(d). If an employer does not properly notify an employee of the requirements of a medical certification, "the employer may not take action against [the] employee for failure to comply with any provision required to be set forth in the notice." 29 C.F.R. § 825.301(f).

The October 12, 2004 letter from defendant, together with the enclosures, meets all applicable statutory and regulatory notice requirements. The letter and accompanying materials were in writing, were sent to plaintiff within two business days of his injury, and gave plaintiff 15 days to provide a medical certification. Included with the letter was an Attending Physician's Statement of Disability, which plaintiff was instructed to complete and return. The disability statement seeks all information required for a proper medical certification, including:

1. the date on which plaintiff's serious health condition commenced;

2. the probable duration of the condition;

3. appropriate medical facts within the knowledge of plaintiff's health care provider regarding the condition; and

4. an assessment of plaintiff's ability to perform the functions of his position.

*See* 29 U.S.C. § 2613(b)(1)-(4). Finally, the FMLA notice sent with the letter warns that the failure to provide a proper medical certification may result in the denial of benefits.

To support his argument that the notice provided by defendant was deficient, plaintiff relies on *Lubke v. City of Arlington*, ___ F.3d ___, 2006 WL 1793268 at *5 (5th Cir. Jun. 30, 2006). However, in *Lubke*, there was no evidence that the employer ever provided the employee with written notice of his obligation to provide a medical certification under the FMLA. By contrast, plaintiff was told to complete a disability statement, which contained all information required for a proper medical certification, and was warned of the consequences of failing to do so. Plaintiff

clearly understood the importance of providing defendant with this certification. Indeed, he completed the form and was awarded FMLA benefits beginning October 21, 2004. *See Dillon v. Carlton*, 977 F.Supp. 1155, 1159 (M.D. Fla. 1997), *aff'd*, 161 F.3d 21 (11th Cir. 1998) (employer's failure to comply with provisions of 29 C.F.R. § 825.305 was irrelevant because physician completed an appropriate medical certification form and employee received FMLA leave).

Nor was plaintiff denied an opportunity to cure any deficiencies in his subsequent medical documentation. The uncontroverted summary judgment evidence shows that defendant contacted plaintiff *three different times* to request an updated medical certification. Shortly after he submitted his original medical certification, an Ecolab disability case manager reminded plaintiff that the certification was good for two weeks and instructed him to provide an updated report after his next appointment with the doctor. (Plf. MSJ at 197-98). On December 20, 2004, Lisa Albright, an employee in the Human Resources Department, telephoned plaintiff to request documentation to support his request for medical leave after November 29, 2004. (*Id.* at 187). Two weeks later, Albright advised plaintiff by letter that his employment would be terminated if the required documentation was not received by January 3, 2005. (Def. MSJ App. at 558). Although plaintiff eventually provided a note from his doctor stating that he was "unable to work from 11-8-04 thru 12-24-04," (*see* Plf. MSJ App. at 96), the note does not address whether plaintiff could perform the functions of his job during that time. *See Kinchelow v. Robinson Property Group*, No. 2-97-CV-047-B, 1998 WL 180316 at *2 (N.D. Miss. Mar. 27, 1998) ("To state that the employee should be excused from work is not the same thing as saying that the employee cannot perform the functions of her job."). Even as of today, plaintiff still has failed to produce a proper medical certification

from his doctor establishing his entitlement to FMLA benefits after December 2, 2004. The court therefore declines to reconsider its rulings with respect to plaintiff's interference claim.[3]

B.

Plaintiff also takes issue with the court's ruling on his discrimination claim. Most of his arguments mirror those raised on summary judgment and need not be discussed. However, the court finds it necessary to clarify the basis for its ruling that the evidence conclusively establishes that defendant would have terminated plaintiff even in the absence of a discriminatory motive. The court also takes this opportunity to discuss plaintiff's pretext argument.

1.

In *Richardson v. Monitronics International, Inc.*, 434 F.3d 327 (5th Cir. 2005), the Fifth Circuit held that a mixed-motive analytical framework applies to an FMLA discrimination claim when the plaintiff attempts to prove his case by circumstantial evidence and argues that discriminatory animus was a motivating factor in the adverse employment action. Under the mixed-motives alternative, once the defendant articulates a legitimate, non-discriminatory reason for its employment decision, the plaintiff must prove that "the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *See Rachid v. Jack In The Box*, 376 F.3d 305, 312 (5th Cir. 2004). If the plaintiff offers sufficient evidence that discrimination was a motivating factor in the employment decision, the burden shifts to the defendant to prove that it would have taken the same action despite any discriminatory animus. *Id.* The defendant has a similar burden when the plaintiff adduces direct evidence of discrimination. *See Fierros v. Texas Dep't of Health*, 274 F.3d 187, 192 (5th Cir. 2001)

---

[3] The court notes that, unlike *Lubke*, where the employer ignored repeated requests for clarification on the substantiation issue, defendant remained available to answer any questions about the need to provide an updated medical certification. It does not appear that plaintiff ever sought clarification of his obligations in this regard.

(defendant must prove by a preponderance of the evidence "that the same decision would have been made regardless of the forbidden factor").

To the extent plaintiff relies on direct evidence or the mixed-motives alternative to prove his FMLA discrimination claim, the court adheres to its original ruling that defendant would have terminated plaintiff even had it not considered his protected absences in making that decision. The attendance policy at the Garland, Texas plant where plaintiff was employed provides that nine unexcused absences over a 365-day period is grounds for immediate termination. The policy is mandatory with "No Exceptions." (Def. MSJ App. at 533). Plaintiff missed 15 days of work between December 2, 2004 and December 23, 2004. None of those absences were covered by the FMLA. For that reason, his termination was justified. *See Richardson*, 434 F.3d at 336 (employer entitled to summary judgment on FMLA retaliation claim where employer established that employee had more than enough unexcused absences to justify termination under company's attendance policy).[4]

2.

Plaintiff also argues that the reason proffered by defendant for terminating his employment was pretextual. In *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court explained:

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from

[4] Plaintiff further argues that defendant did not properly plead mixed-motives as an affirmative defense and that even if the defense was properly raised, it does not impact liability. Both arguments lack merit. Neither *Richardson* nor any other reported Fifth Circuit decision requires a defendant to affirmatively plead mixed-motives as a defense. And while the Supreme Court has suggested that a mixed-motive defense does not necessarily absolve a defendant of liability, *see Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99, 123 S.Ct. 2148, 2152, 156 L.Ed.2d 84 (2003), the Fifth Circuit has held otherwise. *See, e.g. Machinchick*, 398 F.3d at 355, *citing Rachid*, 376 F.3d at 312 (holding that "the employer may seek to avoid *liability* by proving that it would have made the same employment decision in the absence of the illegitimate discriminatory motive") (emphasis added).

> the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt. Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.

*Id.*, 120 S.Ct. at 2108-09 (citations and punctuation omitted). *See also Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004). Here, plaintiff argues that there is "ample evidence of pretext in the record." (Plf. MSJ Br. at 36). This evidence consists of: (1) inconsistent explanations as to who made the decision to fire plaintiff; (2) "subtle" discrepancies in the reasons given for his termination; (3) Albright's failure to verify the Garland plant's attendance policy and her admission that she took plaintiff's FMLA leave into account in deciding to fire him; and (4) other attempts to "set-up" plaintiff for termination. (*See* Plf. MSJ Br. at 37-39). None of this evidence establishes pretext as a matter of law or even raises a genuine issue of material fact for trial.

The court initially observes that the relevant inquiry with respect to pretext is not *who* fired plaintiff, but *why* was he fired. Contrary to the argument made by plaintiff, the record reveals no inconsistencies in the reason given by defendant for his termination. In a letter to plaintiff dated January 17, 2005, defendant explained that "[d]ue to the fact that there is no medical information to support your disability and due to excessive absences, Ecolab is terminating your employment with us effective immediately." (Def. MSJ App. at 566). Defendant has consistently given the same explanation for its termination decision throughout this litigation. (*See* Def. MSJ Br. at 11). Even if minor inconsistencies appear in the record, subtle differences in the reasons given to justify an adverse employment action do not create a fact issue for trial. Rather, plaintiff must show that the shifting explanations are "directly contradictory" or otherwise sufficient to permit a reasonable

factfinder to infer pretext. *See, e.g. Taylor v. County Bancshares, Inc.*, 325 F.Supp.2d 755, 773-74 (E.D. Tex. 2004) (citing cases). No such evidence exists here.

Plaintiff also points to evidence which he contends shows that Albright failed to verify the attendance policy at the Garland plant, considered plaintiff's FMLA leave in calculating his absences, and "set up" plaintiff for termination by requesting medical records she knew did not exist. Although Albright may not have been familiar with the attendance policy at the Garland plant, there is no question that company policy mandates termination if an employee accumulates nine unexcused absences over a 365-day period. As previously discussed, plaintiff missed 15 days of work between December 2, 2004 and December 23, 2004. None of those absences were covered by the FMLA. Likewise, even if Albright improperly considered plaintiff's FMLA-covered absences in recommending his termination, he accumulated more than enough unexcused absences in the month of December alone to justify his termination. *See Gaddis v. Russell Corp.*, 242 F.Supp.2d 1123, 1139 (M.D. Ala. 2003), *aff'd*, 88 Fed.Appx. 385 (11th Cir. 2003) (inaccurate attendance records do not establish pretext where plaintiff had accumulated enough unexcused absences to justify his termination even after accounting for errors). Nor is there any evidence that Albright "set up" plaintiff by requesting medical records she knew did not exist. When plaintiff failed to provide an updated medical report verifying that he could not perform the functions of his job, Albright requested this information from his doctor. In her notes, Albright wrote that "if doctor does not provide it (which he won't since Monte did not go to appt) then we can term." (Plf. MSJ App. at 190). Despite plaintiff's characterization of this evidence, Albright's handwritten note is not sufficient to support an inference that defendant discriminated against plaintiff for exercising his FMLA rights. It was plaintiff's burden to provide an updated medical report to his employer.

Albright cannot be faulted for trying to get this report directly from plaintiff's doctor.[5] *See Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 903-04 (5th Cir. 2000) (affirming summary judgment for employer where evidence of pretext was not sufficient to support an inference of discrimination).

**CONCLUSION**

Plaintiff has not persuaded the court that its summary judgment ruling was manifestly erroneous or otherwise improper. Accordingly, his motion for reconsideration [Doc. #34] is denied. No further motions for reconsideration or clarification of this ruling will be entertained.

SO ORDERED.

DATED: July 13, 2006.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE

[5] The court acknowledges that the regulations prohibit an employer from requesting additional information from the employee's health care provider "[i]f the employee submits a complete certification signed by the health care provider[.]" 29 C.F.R. § 825.307(a). However, this regulation deals only with the adequacy of the *initial* medical certification. *See Kitts v. General Telephone North, Inc.*, No. 2-04-CV-173, 2005 WL 2277438 at *14 (S.D. Ohio Sept. 19, 2005). Here, Albright tried to obtain an *updated* medical report from plaintiff's doctor when plaintiff failed to provide sufficient information to establish his entitlement to FMLA leave after December 2, 2004.